UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X



HANJIN SHIPPING CO. LTD.,

                    Plaintiff,

- against -

UNION PACIFIC RAILROAD CO.,

                    Defendant.
------------------------------------------------------------X

**OPINION AND ORDER**

**05 Civ. 8476 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

Hanjin Shipping Co. Ltd. ("Hanjin") has moved to compel arbitration and to stay this suit pending arbitration of its claims against Union Pacific Railroad Co. ("UP"). For the following reasons, the motion to compel arbitration is granted.

## II. BACKGROUND

### A. The Parties

Hanjin is a corporation organized and existing under the law of the Republic of Korea, with its principal place of business in Seoul, Korea.[1] Hanjin is an international ocean transportation company.[2] It transports shipping containers

---

[1] *See* Complaint with Petition to Compel Arbitration ("Complaint") ¶ 1. *See also* Plaintiff's Memorandum of Law ("Pl. Mem.") at 1 (noting that Hanjin's North American headquarters are in Paramus, New Jersey).

[2] *See* Complaint ¶ 10.

over the ocean on vessels it owns or charters.³ When transportation involves inland carriage, Hanjin subcontracts with inland carriers.⁴

UP is a Delaware corporation with its headquarters in Omaha, Nebraska.⁵ It is a railroad that operates in interstate commerce.⁶ Hanjin subcontracts with UP for inland carriage of cargo to destinations throughout the United States.

**B.  The Agreement**

On August 1, 1997, Hanjin and UP entered into an Exempt Rail Transportation Agreement ("ERTA") to govern the terms of carriage of Hanjin's containers by UP.⁷ The ERTA has been periodically continued, by addendum, for further terms and on July 1, 2002, it was continued through June 30, 2007, with an optional two year extension period.⁸ Under the ERTA, UP agrees to provide rail

---

³    *See* Declaration of Jacob Lee, General Counsel for Hanjin ("Lee Decl.") ¶ 3.

⁴    *See id.*

⁵    *See* Complaint ¶ 2.

⁶    *See* Declaration of Raymond J. Hasiak, Senior Trial Counsel for UP ("Hasiak Decl.") ¶ 3.

⁷    *See* ERTA ¶ 10, Ex. 1 to Lee Decl.

⁸    *See id.*, First Addendum to ERTA ¶ 10, Second Addendum to ERTA ¶ 10, and Third Addendum to ERTA ¶ 10, Ex. 1 to Lee Decl.

transportation of loaded and empty containers between certain specified points for Hanjin.[9] When shipments are under the control of UP, any matters not specifically addressed by the ERTA are governed by the "rules and provisions that would have applied in absence" of the ERTA, such as UP's rules circulars.[10] The rules circulars include the Master Intermodal Transportation Agreement ("MITA"), which was formerly known as the UP Exempt Circular 20-B, a UP publication setting forth UP's standard terms and conditions of carriage.[11] To the extent any provision under the rules circulars is inconsistent with the ERTA, the ERTA governs.[12]

The parties do not dispute the applicability of the ERTA to the shipments in question. The ERTA contains an arbitration clause, providing that "[a]ny dispute arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration in New York, NY, in accordance with the Federal Arbitration Act (Title 9, U.S. Code) and the International Arbitration Rules of the

---

[9] *See* ERTA at 1 (Recitals).

[10] *Id.* ¶ 11(a); Lee Decl. ¶ 14 (citing ERTA ¶¶ 11(a) and 16(b), Ex. 1 to Lee Decl.).

[11] *See* 6/1/03 MITA, Ex. 3 to Lee Decl.

[12] *See* ERTA ¶ 11(a). *See also id.* ¶ 16(b) ("*Except as otherwise set forth herein*, liability for freight loss and damage to lading while under the control [of] UP shall be governed by the applicable rules circular(s).") (emphasis added).

3

American Arbitration Association."[13] The provision also states that "[n]o state or local law provision shall be applied to limit the scope or appropriateness of any arbitration."[14]

Section 16(b) of the ERTA governing liability for cargo damage states: "Except as otherwise set forth herein, liability for freight loss and damage to lading while under the control [of] UP shall be governed by the applicable rules circular(s)."[15] Section 16(b) also notes that a written claim for cargo loss or damage arising out of a transportation under the ERTA must be filed within twelve months from when the Container is tendered to "Hanjin's agent, an adjoining carrier or to a drayman."[16]

The MITA is the applicable rules circular and it is silent as to the arbitrability of cargo loss or damage. However, it contains a forum selection clause which states:

> All lawsuits must be filed within eighteen (18) months from the actual or in the event of loss of Shipment, from the expected date of delivery by [UP] or any Connecting Carrier. All lawsuits for freight loss or damage must be filed in a court of competent

---

[13] *Id.* ¶ 19.

[14] *Id.*

[15] *Id.* ¶ 16(b).

[16] *Id.*

4

jurisdiction in Omaha, Douglas County, Nebraska.[17]

C.   **The Events Leading to This Suit**

Hanjin contracted with UP for rail transportation of several containers originating in the Far East to various destinations in the United States.[18] Hanjjin alleges that "some or all of the cargoes in each container" were broken into and pilfered while in UP's possession.[19]

On September 27, 2005, Hanjin served an arbitration demand on UP pursuant to section 19 of the ERTA.[20] In response, UP advised Hanjin that it would not arbitrate the claims because it believed such claims were governed by the MITA rather than by the arbitration clause in the ERTA.[21] As a result of UP's refusal and because some of those claims were nearing the contractual deadline for bringing suit, Hanjin commenced both arbitration and this action.[22]

---

[17]   MITA Item 3.3.

[18]   Complaint ¶ 10.

[19]   *Id.* ¶¶ 12-13.

[20]   *See* Lee Decl. ¶ 10.

[21]   *See id.* ¶ 11. *See also* Union Pacific Railroad Company's Memorandum of Law in Opposition to Plaintiff's Motion to Compel Arbitration ("Opp. Mem.") at 2.

[22]   *See* Lee Decl. ¶ 15. On September 26, 2005, Hanjin and UP reached an agreement that "Hanjin could satisfy any alleged obligations it might have under MITA Item 3.3 by filing suit in this Court rather than in a court in Omaha,

## III. LEGAL STANDARD

The determination of whether a dispute is arbitrable under the Federal Arbitration Act ("FAA")[23] comprises two questions: "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement."[24] To find a valid agreement to arbitrate, a court must apply the "generally accepted principles of contract law."[25] "[A] party is bound by the provisions of a contract that [it] signs, unless [it] can show special circumstances that would relieve [it] of such obligation."[26]

There is "a strong federal policy favoring arbitration,"[27] which

---

Nebraska, and that this would be totally without prejudice to all rights and defenses of the parties including Hanjin's arbitration rights." *Id.* ¶ 16.

[23] 9 U.S.C. § 3, et seq.

[24] *Hartford Accident & Indemnity Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (quotation marks omitted).

[25] *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004). *Accord Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845 (2d Cir. 1987).

[26] *Genesco, Inc.*, 815 F.2d at 845.

[27] *Ace Capital Re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002) (quotation marks and citations omitted).

6

"'applies with particular force in international disputes.'"[28] The Second Circuit has emphasized that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Accordingly, [f]ederal policy requires us to construe arbitration clauses as broadly as possible."[29]

"[A] court should decide at the outset whether 'the arbitration agreement [is] broad or narrow.'"[30] "No fixed rules govern the determination of an arbitration clause's scope."[31] However, clauses that cover all claims or controversies arising from an agreement have generally been held to be broad.[32]

---

[28] *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004) (quoting *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 654 (2d Cir. 2004)). *Accord Chelsea Square Textiles v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 294 (2d Cir. 1999) (holding that in the context of international transactions, bias in favor of arbitration is particularly strong).

[29] *Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72, 76 (2d Cir. 1998). *Accord Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995).

[30] *Collins*, 58 F.3d at 20 (quoting *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 63 (2d Cir. 1983)).

[31] *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 225 (2d Cir. 2001).

[32] *See, e.g., Collins*, 58 F.3d at 18 ("Any claim or controversy arising out of or relating to this agreement shall be settled by arbitration."); *Abram Landau Real Estate v. Bevona*, 123 F.3d 69, 71 (2d Cir. 1997) ("Contract Arbitrator shall have the power to decide all differences arising between the parties to this agreement as to interpretation, application or performance of any part of this agreement."); *Louis Dreyfus Negoce*, 252 F.3d at 225 (arbitration mandated for "any dispute arising from the making, performance or termination of

To determine if an arbitration clause is broad "a court must determine whether, on the one hand, the language of the clause, taken as a whole, evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause, or if, on the other hand, arbitration was designed to play a more limited role in any future dispute."[33] "The existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."[34]

Under New York law, "a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed."[35] "[M]atters extrinsic to the agreement may not be considered when the intent of the parties can fairly be gleaned from the face of the instrument."[36] In addition, "'the entire contract must be considered, and all parts

---

this Charter Party").

[33]    *Louis Dreyfus Negoce*, 252 F.3d at 224 (citation omitted).

[34]    *Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 284 (2d Cir. 2005).

[35]    *British Int'l Ins. Co. v. Seguros la Republica, S.A.*, 342 F.3d 78, 82 (2d Cir. 2003). *Accord Cruden v. Bank of New York*, 957 F.2d 961, 976 (2d Cir. 1992) (citing *Breed v. Insurance Co. of North Am.*, 385 N.E.2d 1280 (N.Y. 1978)).

[36]    *Cruden*, 957 F.2d at 976 (citing *Teitelbaum Holdings, Ltd. v. Gold*, 396 N.E.2d 1029 (N.Y. 1979)).

8

of it reconciled, if possible, in order to avoid an inconsistency.'"[37]

When interpreting an arbitration clause, "the court looks to all terms of the parties' agreement bearing on arbitration. Even though the words of the agreement's arbitration clause may be broad, its scope may be limited by language elsewhere in the agreement clearly and unambiguously negating or limiting it with respect to a matter in dispute."[38]

When a forum selection clause conflicts with an arbitration clause, a court cannot nullify an arbitration clause "'unless the forum selection clause specifically precludes arbitration.'"[39] Therefore "[w]here the parties to an arbitration agreement specifically have excepted a certain type of claim from mandatory arbitration, it is the duty of courts to enforce not only the full breadth of the arbitration clause, but its limitations as well."[40]

---

[37] *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000) (quoting *Cruden*, 957 F.2d at 976 (citing *National Conversion Corp. v. Cedar Bldg. Corp.*, 246 N.E.2d 351 (N.Y. 1969)).

[38] *Woodcrest Nursing Home v. Local 144, Hotel, Hosp., Nursing Home and Allied Services Union, S.E.I.U., AFL-CIO*, 788 F.2d 894, 898 (2d Cir. 1986) (citing *Nolde Bros. v. Bakery & Confectionery Workers Union*, 430 U.S. 243, 254 (1977)).

[39] *Bank Julius Baer*, 424 F.3d at 284 (quoting *Personal Sec. & Safety Sys. v. Motorola*, 297 F.3d 388, 396 n.11 (5th Cir. 2002)).

[40] *State of New York v. Oneida Indian Nation of New York*, 90 F.3d 58, 62 (2d Cir. 1996).

## IV. DISCUSSION

The first question is whether the ERTA contains a broad agreement to arbitrate. The "paradigm of a broad [arbitration] clause" is one that submits to arbitration "[a]ny claim or controversy arising out of or relating to th[e] agreement."[41] Section 19 of the ERTA provides that "[a]ny dispute arising out of or relating to this Agreement or breach thereof shall be settled by arbitration."[42] This is a broad arbitration clause,[43] and Hanjin's claims are presumptively arbitrable unless UP presents clear and unambiguous evidence that such claims are not within the agreement's scope.[44]

UP's argument that sections 16(b) and 11(a) of the ERTA exclude

---

[41] *Collins*, 58 F.3d at 20. *See also ACE Capital*, 307 F.3d at 26 (holding that the clause, "any dispute [that] shall arise between the parties ... with reference to the interpretation of this Agreement or their rights with respect to any transaction involved" was broad); *Oldroyd*, 134 F.3d at 76 ("[a]ny dispute, controversy or claim arising under or in connection with [the agreement]" was a broad arbitration clause); *Lewis Tree Serv., Inc. v. Lucent Techs., Inc.*, 239 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2002) (holding that a clause covering "any controversy or claim ... related directly or indirectly to this Agreement" was a broad arbitration clause).

[42] ERTA ¶ 19.

[43] *See, e.g., Louis Dreyfus Negoce*, 252 F.3d at 226 (holding that an arbitration clause that covered "the making, performance or termination of this Charter Party" covered all disputes connected with a ship's voyage which was the subject of the Charter Party).

[44] *See Bank Julius Baer*, 424 F.3d at 284; *Oldroyd*, 134 F.3d at 77.

10

issues of liability for freight loss and damage from the arbitration clause is unavailaing. UP relies heavily on section 16(b), which reads in pertinent part: "[e]xcept as otherwise provided herein, liability for freight loss and damage to lading while under the control [of] UP shall be governed by the [MITA]."[45] UP argues that this sentence "clearly removes questions regarding liability for freight loss and damage from the ERTA."[46] However, section 16(b) only applies if there is no provision addressing a point that is "otherwise provided" for in the ERTA. Thus, while "liability for freight loss and damage to lading" under the control of UP may be governed by the MITA, the existence of an arbitration clause in the ERTA trumps the forum selection clause found in the MITA by the plain language of section 16.

*Second*, to the extent section 11(a) incorporates the forum selection clause in the MITA, the ERTA's arbitration clause nonetheless governs. UP relies on section 11(a), to argue that the parties "never contemplated that claims for freight loss and damage would be submitted to arbitration."[47] Section 11(a) of the ERTA provides that "[s]ervice and other matters not specifically addressed in this

---

[45] ERTA ¶ 16(b).

[46] Opp. Mem. at 8.

[47] *Id.*

11

Agreement" are governed by the MITA. UP asserts that the parties intended "that all matters involving performance and obligations imposed by ERTA be subject to arbitration under Section 19 and that all matters involving cargo loss and damage be controlled by Section 11."[48] Section 11(a) of the ERTA clearly provides, however, that "[t]o the extent any [rules circulars] are inconsistent with the terms of [the ERTA], the terms of [the ERTA] shall govern."

Finally, even if the MITA's forum selection clause did conflict with the ERTA's arbitration clause the arbitration clause would still govern. The MITA does not mention arbitration in relation to freight loss claims. MITA Item 3.3 requires only that "[a]ll *lawsuits* for freight loss or damage must be filed in a court of competent jurisdiction in Omaha, Douglas County, Nebraska."[49] While the forum selection clause in the MITA expresses a venue requirement for any cargo loss or damage litigation, it does not expressly forbid arbitration as an alternative form of dispute resolution. Thus, it does not conflict with the arbitration clause. But even if it did, under the rule of *Bank Julius Baer*, the arbitration agreement cannot be nullified on these grounds.[50]

---

[48] *Id.* at 3.

[49] MITA Item 3.3 (emphasis added).

[50] *See Bank Julius Baer*, 424 F.3d at 284 (holding that when a forum selection clause conflicts with an arbitration clause, the arbitration clause governs

12

A court must look first to the "face of the instrument" to determine the intent of the parties.[51] As noted, the arbitration clause contained in section 19 of the ERTA states that "[a]ny dispute arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration."[52] There is no language in the ERTA from which I could conclude "with positive assurance" that a claim for cargo loss or damage is not within the scope of the arbitration clause.[53] In fact, the language points to the contrary. Therefore, Hanjin's motion to compel arbitration is granted and this case is closed.

## V. CONCLUSION

Should the parties wish to confirm or vacate the arbitration award, they must bring a separate action, which I will accept as a related case. The Clerk of the Court is directed to close this motion [docket #10] and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
April 26, 2006

---

unless the forum selection clause specifically forecloses arbitration.).

[51] *Cruden*, 957 F.2d at 976 (citations omitted).

[52] ERTA ¶ 19.

[53] *See Bank Julius Baer*, 424 F.3d at 284.

13

## - Appearances -

**For Plaintiff:**

Randolph H. Donatelli, Esq.
Cichanowicz, Callan, Keane, Vengrow & Textor
61 Broadway, Suite 3000
New York, NY 10006
(212) 344-7042

**For Defendant:**

Barry Neil Gutterman, Esq.
Barry N. Gutterman & Associates, P.C.
60 East 42nd Street, 46th Floor
New York, NY 10165
(212) 983-1466